IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
October 4, 2018 Session

## CHRISTOPHER BATEY v. DELIVER THIS, INC., ET AL.

**Appeal from the Workers' Compensation Appeals Board**
**Court of Workers' Compensation Claims**
**No. 2016-05-0666   Thomas Wyatt, Judge**

_____

**No. M2018-00419-SC-WCO-WC**

_____

In this workers' compensation case, Christopher Batey ("Employee") filed a Petition for Benefit Determination after he sustained a back injury while working for Deliver This, Inc. ("Employer"). The trial court determined that Employee was entitled to 275 weeks of permanent partial disability benefits pursuant to Tennessee Code Annotated section 50-6-242(a)(2). On appeal, the Workers' Compensation Appeals Board affirmed the trial court's judgment, holding that the trial court erred in "defining an employee's burden of proof under Tennessee Code Annotated section 50-6-242(a)(2) and in defining the phrase 'employee's pre-injury occupation' as used in subsection 242(a)(2)(B)" but concluding that the errors were harmless under the circumstances presented. Batey v. Deliver This, Inc., No. 2016-05-0666, 2018 WL 805490, at *7 (Tenn. Workers' Comp. App. Bd. Feb. 6, 2018). Employer and its insurer, Auto-Owners Insurance Company, have appealed. Pursuant to Tennessee Supreme Court Rule 51, section 2, this Court directed that the appeal not be referred to the Special Workers' Compensation Panel. Upon our review, we affirm the judgment of the Workers' Compensation Appeals Board and adopt its opinion in its entirety as set forth in the attached Appendix.

**Tenn. Sup. Ct. R. 51, § 2; Judgment of the Workers' Compensation Appeals Board Affirmed**

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Michael L. Haynie, Nashville, Tennessee, for the appellants, Deliver This, Inc., and Auto-Owners Insurance Co.

D. Russell Thomas, Murfreesboro, Tennessee, for the appellee, Christopher Batey.

**OPINION**

On July 13, 2016, Christopher Batey ("Employee") filed a Petition for Benefit Determination with the Tennessee Bureau of Workers' Compensation, seeking permanent disability benefits for a back injury he sustained while working for his employer, Deliver This, Inc. ("Employer"), on February 24, 2015. After a compensation hearing, the Court of Workers' Compensation Claims determined that Employee was entitled to 275 weeks of permanent partial disability benefits pursuant to Tennessee Code Annotated section 50-6-242(a)(2). In reaching this conclusion, the trial court considered the six criteria identified in section 50-6-242(a)(2):

> (1) Employee was eligible for increased benefits pursuant to section 50-6-207(3)(B) (also called a "resulting award"); (2) Employee was assigned a permanent medical impairment rating at or above 10% to the body as a whole; (3) the treating physician certified that Employee could not perform his "pre-injury occupation"; (4) Employee was not earning wages equal to or greater than 70% of his pre-injury salary; (5) limiting Employee's award to the increased benefits as provided in section 50-6-207(3)(B) would be inequitable; and (6) Employee's case was "extraordinary."

Batey v. Deliver This, Inc., No. 2016-05-0666, 2018 WL 805490, at \*2 (Tenn. Workers' Comp. App. Bd. Feb. 6, 2018). On September 11, 2017, following the issuance of the compensation order, Employee filed a motion for prejudgment interest under Tennessee Code Annotated section 47-14-123 on the benefits awarded, which the trial court denied.

Employer and its insurer, Auto-Owners Insurance Company, appealed the compensation order, and Employee appealed the denial of prejudgment interest. The Workers' Compensation Appeals Board ("Appeals Board") determined that "the trial court erred in defining an employee's burden of proof under Tennessee Code Annotated section 50-6-242(a)(2) and in defining the phrase 'employee's pre-injury occupation' as used in subsection 242(a)(2)(B)." Id. at \*7. However, the Appeals Board concluded that the errors were harmless under the circumstances of the case, and it affirmed the trial court's award of permanent partial disability benefits. Id. The Appeals Board also affirmed the trial court's denial of prejudgment interest. Id.

Employer and its insurer have appealed the decision of the Appeals Board. Pursuant to Tennessee Supreme Court Rule 51, section 2, this Court directed that the appeal not be referred to the Special Workers' Compensation Panel. Oral arguments were heard in Nashville on October 4, 2018. After careful consideration, we affirm the

judgment of the Appeals Board and adopt its well-reasoned opinion in its entirety as set forth in the attached Appendix.  Costs of this appeal are taxed to Deliver This, Inc., and Auto-Owners Insurance Company, for which execution may issue if necessary.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE

## APPENDIX

## OPINION OF THE WORKERS' COMPENSATION APPEALS BOARD

### Factual and Procedural Background

Christopher Batey ("Employee"), a forty-six-year-old resident of Cannon County, Tennessee, worked as a delivery driver for Deliver This, Inc. ("Employer"). On February 24, 2015, while bending over to wrap a pallet, Employee felt a "pop" and immediate pain in his low back and left leg. He was provided a panel of physicians and selected Dr. Melvin Law, an orthopedic surgeon, as his authorized treating physician. Dr. Law diagnosed a large disc herniation at L5-S1 and, after Employee completed a course of physical therapy, recommended surgery.

Following surgery, Employee continued to complain of weakness and pain in his left leg, and Dr. Law concluded he retained some degree of permanent nerve dysfunction. He placed Employee at maximum medical improvement on August 19, 2015, and assigned a permanent medical impairment rating of 14% to the body as a whole.[1] He also released Employee to "return to work at this time" and listed no permanent work restrictions.[2]

In an October 26, 2015 report, a nurse practitioner in Dr. Law's office noted that Employee "is currently not working." Employee still had complaints of pain, and the nurse practitioner recommended a foraminal steroid injection due to chronic lumbar pain. A referral was made for pain management at that time. On January 6, 2016, the nurse practitioner noted on-going lumbar pain with neuritis and radiculitis.[3]

---

[1] During his deposition, Dr. Law acknowledged that he originally assigned an impairment rating of 10% to the body as a whole, which he then increased to 14%. He could not recall a specific reason for the increase, but testified it was likely due to Employee's residual symptoms and on-going nerve dysfunction.

[2] In the medical records introduced as Exhibit 4 during the trial, there were two forms entitled "Final Medical Report" (Form C-30A). On the first, which is undated, Dr. Law indicated that Employee could return to "restricted duty" as of August 19, 2015. On the second, dated August 19, 2015, Dr. Law indicated that Employee could return to "regular duty" as of that date.

[3] Each report electronically signed by the nurse practitioner was also reviewed and "electronically co-signed" by Dr. Law.

In a March 29, 2016 Standard Form Medical Report (Form C-32), Dr. Law noted in the "Functional Capacity Assessment" section certain physical limitations, including limits on lifting, prolonged sitting, prolonged standing or walking, repetitive pushing or pulling, and frequent or repetitive climbing, balancing, stooping, kneeling, crouching, crawling, or twisting. In a February 2017 deposition, Dr. Law testified that, in his opinion, Employee "would not be able to return to his pre-injury status" at work. On cross-examination, however, Dr. Law admitted that he had previously released Employee to return to work as of August 19, 2015, with no permanent work restrictions. Upon further questioning, Dr. Law drew a distinction between formal work restrictions and physical "limitations" based on his review of Employee's functional assessment. On July 26, 2017, Dr. Law completed a Physician Certification Form opining that Employee's permanent restrictions prevented him from performing his pre-injury occupation. Dr. Law, or someone on his behalf, typed an additional sentence onto the form stating, "[t]his is per my testimony by deposition and the job description in the deposition."[4]

During the compensation hearing, the primary issue was the amount of the permanent disability benefits to which Employee was entitled. Both parties presented testimony from vocational experts, and Employee sought one of three remedies: (1) permanent total disability pursuant to Tennessee Code Annotated section 50-6-207(4)(A) (2017); (2) "extraordinary" relief up to a maximum of 275 weeks of permanent partial disability benefits pursuant to Tennessee Code Annotated section 50-6-242(a)(2); or (3) increased benefits pursuant to Tennessee Code Annotated section 50-6-207(3)(B). Employer denied that Employee was entitled to any of these remedies, and asserted it was responsible only for an "original award" based on the degree of permanent medical impairment.

---

[4] The trial court observed in footnote 5 of its compensation hearing order that the parties had submitted over 350 pages of medical records reviewed by Dr. Law in preparation for his deposition. The trial court, after reviewing the deposition, concluded that a review of those records was unnecessary to its determination of the issues. The court further indicated that, in the event of an appeal, the parties could file a motion with the Appeals Board "to determine if it will accept the subject records as part of the record on appeal." However, we caution that such a motion would be inappropriate, as we have noted on numerous previous occasions that we will not consider information on appeal that was not admitted into evidence and considered by the trial court. *See, e.g., Hadzic v. Averitt Express*, No. 2014-02-0064, 2015 TN Wrk. Comp. App. Bd. LEXIS 14, at *13 n.4 (Tenn. Workers' Comp. App. Bd. May 18, 2015) ("[W]e will not consider on appeal testimony, exhibits, or other materials that were not properly admitted into evidence at the hearing before the trial judge."); *see also* Tenn. Comp. R. & Regs. 0800-02-22-.04(1) (2015) ("Evidence not contained in the record submitted to the clerk of the workers' compensation appeals board shall not be considered on appeal.").

The trial court concluded Employee was entitled to permanent partial disability benefits of 275 weeks pursuant to the "extraordinary" relief described in section 50-6-242(a)(2). In so holding, the trial court considered the six criteria identified in the statute: (1) Employee was eligible for increased benefits pursuant to section 50-6-207(3)(B) (also called a "resulting award"); (2) Employee was assigned a permanent medical impairment rating at or above 10% to the body as a whole; (3) the treating physician certified that Employee could not perform his "pre-injury occupation"; (4) Employee was not earning wages equal to or greater than 70% of his pre-injury salary; (5) limiting Employee's award to the increased benefits as provided in section 50-6-207(3)(B) would be inequitable; and (6) Employee's case was "extraordinary." Employer has appealed the compensation order.[5]

Following the issuance of the compensation order, Employee filed several post-trial motions, including a motion for pre-judgment interest. Following a motion hearing, the trial court denied Employee's motion, concluding the exclusive remedy provisions of the Workers' Compensation Law and cases interpreting this language precluded an award of pre-judgment interest. Employee has appealed that order.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2017). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a

---

[5] Employee has not appealed the trial court's decision not to award permanent total disability benefits.

way that does not favor either the employee or the employer.   Tenn. Code Ann. § 50-6-116 (2017).[6]

## Analysis

### *Permanent Disability Benefits*

The manner in which a trial court determines an injured worker's eligibility for permanent disability benefits is governed primarily by two statutes: Tennessee Code Annotated sections 50-6-207 and 50-6-242.  When a worker suffers a compensable work injury, reaches maximum medical improvement, and is assigned a permanent medical impairment rating, he or she is entitled to receive permanent disability benefits. *See* Tenn. Code Ann. § 50-6-207(3)(A). The amount of such benefits is calculated by multiplying the employee's medical impairment rating by 450, then multiplying the result by the employee's weekly compensation rate.  This amount is designated the "original award."   An injured worker is entitled to the "original award" regardless of his or her employment status as of the date of maximum medical improvement. *Id.*

If, at the end of the initial period of compensation (the number of weeks represented by the original award), the employee has not returned to work for any employer at an equal or greater rate of pay as before the injury, then the employee qualifies for an increased benefit equal to 1.35 times the original award (minus a credit for payment of the original award).  A trial court can further increase this award if: (1) the employee lacks a high school diploma or general equivalency diploma; (2) the employee is over the age of 40 at the time the initial period of compensation ends; or (3) the unemployment rate in the employee's Tennessee county of employment was at least two percentage points higher than the state's unemployment rate at the time the initial period of compensation ends.  *Id.*  These additional benefits are generally called an "increased award" or "increased benefits."

If an employee qualifies for increased benefits as provided in section 50-6-207(3), but the trial court finds the employee's case to be "extraordinary" pursuant to section 50-

---

[6] Employee relies on the former standard of review embodied in Tennessee Code Annotated section 50-6-217(a)(3) (repealed 2017).  Section 50-6-217(a)(3) authorized us to reverse or modify a trial court's decision if the rights of a party were prejudiced because the findings of the trial judge were "not supported by evidence that is both substantial and material in light of the entire record."  However, this code section was deleted effective May 9, 2017.  Consequently, as noted above, the standard we apply in reviewing the trial court's decision presumes that the trial judge's factual findings are correct unless the preponderance of the evidence is otherwise.  Tenn. Code Ann. § 50-6-239(c)(7).

6-242(a)(2) and further determines by clear and convincing evidence that limiting the injured worker to the increased benefits in section 207(3)(B) would be inequitable in light of the totality of the circumstances, the trial court can award permanent partial disability benefits not to exceed 275 weeks if three additional facts are shown: (1) the employee's medical impairment rating is 10% or higher; (2) the authorized treating physician has certified on a Bureau form that the employee "no longer has the ability to perform the employee's pre-injury occupation" due to "permanent restrictions on activity" caused by the work accident; and (3) at the time of trial, the employee is earning less than 70% of his or her pre-injury average weekly wage or salary. *See* Tenn. Code Ann. § 50-6-242(a).

In the alternative, if a trial court finds that the work injury "totally incapacitates the employee from working at an occupation that brings the employee an income," it can award the employee permanent total disability benefits, which are paid at the employee's weekly compensation rate from the date of maximum medical improvement until the date the employee qualifies for "full benefits in the Old Age Insurance Benefit Program under the Social Security Act." *See* Tenn. Code Ann. § 50-6-207(4).

In the present case, Employee alleged at trial entitlement to: (1) permanent total disability benefits under section 207(4); or, in the alternative, (2) "extraordinary relief" under section 242(a)(2); or, in the alternative, (3) increased benefits under section 207(3)(B). Employer argued in the trial court that because Employee was originally released to return to work without restrictions and unreasonably failed to return to work, he should have been limited to the original award as provided in section 207(3)(A).[7] Following the compensation hearing, the trial court concluded that Employee qualified for extraordinary relief pursuant to section 242(a)(2) and awarded 275 weeks of permanent partial disability benefits. Although we disagree with several of the trial court's determinations, we conclude the evidence does not preponderate against the award of permanent partial disability benefits pursuant to Tennessee Code Annotated section 50-6-242(a)(2).

*Extraordinary Relief*

First, with respect to the "qualifying" criteria for application of section 242(a)(2), the trial court concluded that Employee was eligible for increased benefits, that Employee's case was "extraordinary," and that limiting Employee's award to the benefits provided in section 207(3)(B) would be "inequitable in light of the totality of the

---

[7] This argument appears to be based on Employee's alleged failure to seek or obtain employment with any employer, as counsel for Employer noted during trial that his client had gone out of business.

circumstances." Among other findings, the trial court considered the fact that limiting Employee to the benefits provided in section 207(3)(B) would result in Employee's receiving a permanent partial disability award significantly less than the vocational disability ratings of both testifying vocational experts. In consideration of this and the totality of the circumstances, we conclude the evidence does not preponderate against the trial court's determination on this issue.

Second, with respect to the three additional factors listed in section 242(a)(2), there is no question the authorized treating physician assigned a permanent medical impairment rating of at least ten percent to the body as a whole. It is also undisputed that, at the time of trial, Employee was not earning an average weekly wage or salary greater than or equal to seventy percent of his pre-injury average weekly wage or salary. Thus, the critical issue is whether Employee established that the authorized treating physician had properly certified that Employee "no longer has the ability to perform the employee's pre-injury occupation." It is on this issue that we diverge from the trial court's analysis.

In considering whether Employee satisfied the criteria concerning the certification of the authorized treating physician, the trial court concluded that "[Employee]'s submission of the certification signed by Dr. Law established [this] factor ... by clear and convincing evidence." We conclude, however, the statute does not require an injured worker to establish this factor by clear and convincing evidence. Instead, the plain language of the statute requires a trial court to find by clear and convincing evidence only that limiting the employee's recovery to the benefits provided in section 207(3)(B) would be "inequitable in light of the totality of the circumstances." Thereafter, if the trial court makes such a finding, then the three factors listed in section 242(a)(2)(A)-(C) need only be established by a preponderance of the evidence.

This interpretation is further supported by the language in section 242(a)(2)(B), which specifies the employer's burden of proof in rebutting the injured worker's evidence but says nothing about the injured worker's burden of proof. In circumstances where an employee offers into evidence the required certification form signed by the authorized treating physician, the opinion as reflected on that form is accorded a presumption of correctness, and the burden shifts to the employer to prove, by "contrary clear and convincing evidence," that the employee has the ability to perform his or her pre-injury occupation.

In the present case, Dr. Law signed a "Physician Certification Form," which is the relevant form available from the Bureau of Workers' Compensation, certifying that Employee "no longer has the ability to perform the employee's pre-injury occupation."

- 9 -

Employer asserts that by adding a sentence to the form ("This is per my testimony by deposition and the job description in the deposition."), Dr. Law qualified his opinion that Employee cannot return to his pre-injury occupation and, as a result, the burden-shifting mechanism described in section 242(a)(2)(B) was never triggered. Therefore, under Employer's theory, Employee failed to satisfy the necessary criteria in section 242(a)(2)(B) and, as a result, Employer had no burden to satisfy.

We disagree. The sentence Dr. Law added to the certification form does not detract from the previous sentence certifying that the employee "no longer has the ability to perform the employee's pre-injury occupation." Instead, the additional sentence adds to his opinion by referencing his deposition testimony and the job description attached thereto. Once Dr. Law signed the certification form and it was properly submitted to the court, Employee's burden of establishing this criteria as required by section 242(a)(2)(B) was satisfied. The burden then shifted to Employer to show, by "contrary clear and convincing evidence," that Employee was capable of performing his pre-injury occupation. Employer did not meet this burden.

*Pre-Injury Occupation*

Employer next argues that the trial court erred in concluding Employee established he "no longer has the ability to perform [his] pre-injury occupation" due to permanent restrictions on his activities. Specifically, Employer asserts the trial court erred in defining the term "pre-injury occupation" to include only "the job held by the employee at the time of the injury." Since the phrase "pre-injury occupation" is not defined in the statute, we must consider its plain and ordinary meaning. *See Maupin v. Methodist Med. Ctr.*, No. E1999-02181-WC-CV, 2000 Tenn. LEXIS 102, at *4 (Tenn. Workers' Comp. Panel Mar. 2, 2000) ("In construing a statute, proper interpretations should give effect to the entire statute by giving its words their natural and ordinary meaning."). Black's Law Dictionary defines the term "occupation" as "a person's usual or principal work or business." Black's Law Dictionary (10th ed. 2014). Merriam-Webster defines "occupation" as "an activity in which one engages." Merriam-Webster Dictionary, https://www.merriamwebster.com/dictionary/occupation (last visited Feb. 6, 2018). The plain and ordinary meaning of the word "occupation" includes more than a specific job, but describes the *type* of work one does as his or her "usual or principal work."

Moreover, we must consider the statutory context in which the term is used. To qualify for "extraordinary" relief as described in section 242(a)(2), an employee must first show that he or she did not return to work for "any employer" at an equal or greater rate of pay as noted in section 207(3)(B). In other words, having returned to work as of

the date the initial period of compensation ends at any job that pays at least as much as the employee's pre-injury job will disqualify that worker from receiving increased benefits, which, in turn, would disqualify that same worker from seeking extraordinary relief under section 242(a)(2). It would be incongruous to conclude that an employee can get increased benefits under section 207(3)(B) only by showing he or she did not return to work for "any employer" at an equal or greater rate of pay, but can satisfy section 242(a)(2)(B) merely by showing that he or she was unable to return to "the job held by the employee at the time of injury," as was found by the trial court. Stated another way, it would be illogical to conclude the criteria to qualify for extraordinary relief under section 242(a)(2) is *less* burdensome than the criteria to qualify for "increased benefits" under section 207(3)(B).

Thus, we agree with Employer that the trial court's definition of "employee's pre-injury occupation" as used in section 242(a)(2)(B) is too restrictive. Instead, section 242(a)(2)(B) requires a physician to certify that the injured employee is incapable of returning to that employee's pre-injury "occupation," as that term is commonly understood. Employee asserts, and the trial court agreed, that such an interpretation would place an unreasonable burden on injured workers, since a person's "occupation" may encompass innumerable potential jobs. Under Employee's argument, most physicians will be unable, or at least reluctant, to sign such a certification without sufficient information as to the physical requirements of every potential job within that injured worker's "occupation." However, such an argument is more appropriately directed to the General Assembly.[8]

Furthermore, as discussed above, the statute requires only that the injured worker submit the required certification form signed by the authorized treating physician, and the burden then shifts to the employer to establish, by contrary clear and convincing evidence, that the injured worker *is* capable of returning to a job within his or her pre-injury occupation. In the present case, the required physician certification form was signed and properly admitted into evidence. We previously concluded that the additional language added by Dr. Law did not negate the required certification. Thus, Dr. Law's

---

[8] We also note that both parties presented expert vocational testimony during trial. In his November 2, 2016 report, Employee's expert concluded that, "[g]iven the residual functional limitations . . ., [Employee] is precluded from resuming future employment above a restricted range of activities at the limited [l]ight exertional demand level." In her July 19, 2017 report, Employer's vocational expert acknowledged that if the limitations set out in Dr. Law's Form C-32 are accepted, Employee "[c]ould perform a limited range of light work." Given that both vocational experts concluded Employee's prior occupation as a truck driver fell within the medium to heavy job classification, such information would support Dr. Law's certification that Employee is unable to return to his pre-injury occupation.

- 11 -

certification is entitled to a presumption of correctness and the burden shifted to Employer to show, by contrary clear and convincing evidence, that Employee was capable of returning to his pre-injury occupation. No such evidence was presented in this case. As a result, although we conclude the trial court erred in its interpretation of the phrase "pre-injury occupation," we also conclude this error was harmless under the circumstances presented, since Employer did not meet its burden of rebutting Dr. Law's certification by "contrary clear and convincing evidence" as set forth in section 242(a)(2)(B).

*Pre-judgment Interest*

Finally, Employee asserted in a post-trial motion his entitlement to pre-judgment interest, which the trial court denied. Employee argues on appeal that while pre-reform law indicated pre-judgment interest was unavailable in workers' compensation cases, *see, e.g., Woodall v. Hamlett*, 872 S.W.2d 677 (Tenn. 1994) (holding the statute authorizing pre-judgment interest is inapplicable in workers' compensation cases due to the exclusive remedy provision in Tennessee Code Annotated section 50-6-108), this issue should be reconsidered in light of the recent amendments to the Workers' Compensation Law.

However, the pertinent language in Tennessee Code Annotated section 50-6-108 (2017), which describes the benefits available under the Workers' Compensation Law as an injured worker's exclusive remedy, has not changed. As a result, we find nothing in the Workers' Compensation Reform Act of 2013, or subsequent amendments, that authorizes an award of pre-judgment interest pursuant to Tennessee Code Annotated section 47-14-123 (2017).[9] Accordingly, we find Employee's argument to be without merit and affirm the trial court's order denying pre-judgment interest.

**Conclusion**

For the foregoing reasons, we conclude the trial court erred in defining an employee's burden of proof under Tennessee Code Annotated section 50-6-242(a)(2) and in defining the phrase "employee's pre-injury occupation" as used in subsection 242(a)(2)(B). However, we conclude these errors were harmless under the circumstances presented and, therefore, affirm the trial court's determinations as to Employee's entitlement to permanent partial disability benefits. We also affirm the trial court's denial

---

[9] We also note that Tennessee Code Annotated section 50-6-225(c)(1) (2017) defines how an injured worker's entitlement to post-judgment interest is calculated in certain circumstances, but does not authorize an award of pre-judgment interest.

of Employee's claim for pre-judgment interest. All other aspects of the compensation hearing order are affirmed, and the order, as modified, is hereby certified as final. The order denying pre-judgment interest is likewise certified as final.