**FILED**
**Jun 30, 2023**
**03:30 PM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KNOXVILLE

| | | |
|---|---|---|
| **KIMBERLY SATTERFIELD,** | ) | **Docket No. 2019-03-1440** |
| **Employee,** | ) | |
| **v.** | ) | |
| **SMOKY MOUNTAIN HOME** | ) | |
| **HEALTH & HOSPICE,** | ) | **State File No. 7635-2019** |
| **Employer,** | ) | |
| **And** | ) | |
| **BRIDGEFIELD CASUALTY** | ) | |
| **INSURANCE,** | ) | **Judge Lisa A. Lowe** |
| **Carrier.** | ) | |

## COMPENSATION ORDER

The Court held a Compensation Hearing on June 27, 2022. The issue is whether Ms. Satterfield is entitled to increased benefits, extraordinary relief, or permanent total disability benefits. For the reasons below, the Court holds that Ms. Satterfield is entitled to extraordinary relief.

## History of Claim

Ms. Satterfield worked as a registered nurse for Smoky Mountain Home Health & Hospice. On January 29, 2019, Ms. Satterfield stepped on ice and fell. She landed on her right knee with her right arm outstretched, injuring her shoulder, middle finger, hip, and knee, all on her right. Ms. Satterfield received authorized medical treatment from Drs. Conrad Ivy for her knee and hip, Paul Brady for shoulder, and Timothy Renfree for the finger.

The Court held a previous Compensation Hearing and issued an order granting Ms. Satterfield an original award based on a combined impairment rating of twelve percent to the whole body. Ms. Satterfield's initial compensation period has now expired, and she seeks increased benefits, extraordinary relief, or permanent total disability benefits.

1

The parties introduced into evidence the deposition transcripts of various physicians and the reports and testimony of their respective vocational experts. The Court summarizes the evidence and testimony below.

Ms. Satterfield saw Dr. William Kennedy on her own for a one-time evaluation. He is a board-certified orthopedic surgeon and American Board of Independent Medical Examiners, and a member of the Medical Impairment Rating Registry. He assigned the following permanent restrictions: no repetitive right-hand motion; no reaching or working above shoulder level; no climbing, crawling, ladders/bending, stooping, squatting, kneeling, crawling; use a cane/walker; sit at least seventy-five percent of the time and alternate positions every thirty minutes; no lifting more than ten pounds occasionally with both hands, and no lifting more than five pounds frequently with the right hand.

Dr. Paul Brady is the authorized orthopedic shoulder surgeon. He ordered a Functional Capacity Evaluation that placed Ms. Satterfield at sedentary work activity. Dr. Brady adopted the Functional Capacity Evaluation restrictions: occasional lift of twenty pounds and frequent ten pounds using both hands, and lift to ten pounds overhead occasionally with right hand. When asked if Ms. Satterfield could carry a laptop computer, he said she could lift a light laptop with both hands for short periods of time, but not for anything considered "occasional." Dr. Brady stated that he did not believe Ms. Satterfield would have difficulty working at a computer. Addressing whether Dr. Brady adopted portions of the FCE contained after the "Summary of Findings," he said he considered that portion of the data that helps the therapist form the conclusions listed in the findings.[1] Finally, Dr. Brady completed a physician certification form confirming that Ms. Satterfield is no longer able to perform her pre-injury occupation.

Michael Galloway, a vocational consultant with a master's degree in vocational rehabilitation counsel and a certified rehabilitation counselor, evaluated Ms. Satterfield. He found that she is 100% vocationally disabled. Mr. Galloway said that he used the DOT database in forming his opinion, but the database has not been completely revised since 1991.[2] Mr. Galloway testified Ms. Satterfield does not have access to full unlimited sedentary work because she would have difficulty keyboarding. He based that opinion on part of the FCE testing grip strength, which noted Ms. Satterfield dropped several nuts, grimaced, and held her breath.

Smoky Mountain obtained an evaluation with vocational expert Michelle McBroom Weiss, who has a master's in vocational rehabilitation counseling, many certifications, and is an American Board of Vocational Experts diplomate. Ms. Weiss testified that many job types, such as sedentary nursing and remote telehealth, are not included in the DOT database, because they did not exist at the time of the last update. Ms. Weiss did not assign

---

[1] Neither party introduced the full Functional Capacity Evaluation report into evidence.
[2] Some positions in the DOT database were updated in 1998.

a percentage of vocational disability, but she did testify that based on Ms. Satterfield's education and past work history, she would be able to perform some work. She referenced ten examples of positions that in her opinion Ms. Satterfield would qualify for and be able to perform. She said that employers typically list the qualifications they would like their ideal candidate to possess, but they are often willing to hire those who match closely enough and have extensive experience.

Ms. Satterfield testified as well. She has not worked since leaving Smoky Mountain. She said she wants to work but does not think she can physically meet the demands of any type of employment. She has a Bachelor of Science Nursing degree, a master's in nurse practices and women's health, as well as certifications for nurse consulting for the legal field and mother/baby monitoring. Ms. Satterfield said that she is unable to hold her arm up for extended periods, and her fingers hurt when she types due to the work-related finger fracture.

### Findings of Fact and Conclusions of Law

Ms. Satterfield has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). She must prove by a preponderance of the evidence that she is entitled to the requested benefits. Tenn. Code Ann. § 50-6-239(c)(6) (2022).

Since Ms. Satterfield's initial compensation period has now expired, and she has not returned, she is eligible for increased benefits. The increased benefits are based first on her work and earnings status and may be increased based on factors such as education, age, and the unemployment rate in the county where she lives. Tenn. Code Ann. § 50-6-207(3)(B). These additional benefits are referred to as "increased award" or "increased benefits."

If an employee qualifies for increased benefits, but the trial court finds the employee's case to be "extraordinary" under section 50-6-242(a)(2) and concludes that limiting the injured worker to the increased benefits would be inequitable considering the totality of the circumstances, the trial court can award benefits not to exceed 275 weeks. However this type of award has additional requirements: (1) the employee's medical impairment rating is 10% or higher; (2) the authorized treating physician certifies that the employee "no longer has the ability to perform the employee's pre-injury occupation" due to "permanent restrictions on activity" caused by the work accident; and (3) at the time of trial, the employee is earning less than 70% of his or her pre-injury average weekly wage or salary. Tenn. Code Ann. § 50-6-242(a).

In the alternative, if a trial court finds that the work injury "totally incapacitates the employee from working at an occupation that brings the employee an income," it can award the employee permanent total disability benefits. Tenn. Code Ann. § 50-6-207(4); *Batey*

*v. Deliver This, Inc.,* 568 S.W.3d 91, 97 (Tenn. 2018).

Here, the Court must compare the differing opinions of the vocational experts. Mr. Galloway based his opinion on data that has not been significantly updated since 1991. Ms. Weiss testified that the health filed has changed, leading to remote positions for those with nursing backgrounds.

Further, Mr. Galloway did not think that Ms. Satterfield could perform keyboarding, noting portions of the FCE that were not included in the FCE Summary of Findings, and were not adopted by Dr. Brady. In fact, in response to the question, "Would she have difficulty working at a computer," Dr. Brady said, "I don't believe so." The fact that Dr. Brady thinks Ms. Satterfield could do computer work supports Ms. Weiss's opinion that work is available that she can perform.

Ms. Satterfield is entitled to increased benefits because she did not return to work at the conclusion of her initial compensation period. She would also qualify for benefits based on her age, but not for limited education or the unemployment rate in the county where she lives. The Court now turns to her entitlement to extraordinary relief.

To qualify for extraordinary relief, she must have a rating of ten percent, a physician's certification form, and be making less than seventy percent of her pre-injury salary. In the first Compensation Order, the Court deemed Ms. Satterfield to have a combined rating of twelve percent. Dr. Brady completed a physician's certification form stating Ms. Satterfield is unable to return to her pre-injury employment. Ms. Satterfield has not worked since leaving Smoky Mountain, so she has no salary.

Considering those criteria, the Court must determine if it would be inequitable to limit Ms. Satterfield to increased benefits. Ms. Satterfield has substantial restrictions, and her employment opportunities are significantly limited. While Ms. Weiss did not provide a percentage of vocational disability, it would likely be high. Ms. Weiss referenced ten *possible* jobs that Ms. Satterfield could perform. Ms. Weiss was unable to say Ms. Satterfield could perform all ten jobs. Rather, she said that that based on her experience in vocational rehabilitation, she could say that Ms. Satterfield could perform *some* of those jobs due to her nursing education and experience. So, while Ms. Satterfield is not permanently and totally disabled, she established by clear and convincing evidence it would be inequitable to limit her to increased benefits alone, since she has no real job possibilities.

The Court holds that she is entitled to 275 weeks of benefits, which equates to $188,397.00.

Turning to permanent total disability benefits, Ms. Satterfield has some substantial restrictions. While the Court acknowledges that her employment opportunities are

significantly limited, they are not non-existent. Bolstered by Dr. Brady's testimony, the Court agrees with Ms. Weiss that based on Ms. Satterfield's educational background and experience, some jobs exist that she could perform within her assigned restrictions. Therefore, she does not qualify for permanent total disability benefits.[3]

**IT IS, THEREFORE, ORDERED** as follows:

1. Smoky Mountain Home and Health and Hospice shall pay Ms. Satterfield 275 weeks of benefits at the stipulated compensation rate of $685.08, for a total of $188,397.00. Attorney Roberto is entitled to a fee of twenty percent of Ms. Satterfield's award, which equates to $37,679.40.

2. Ms. Satterfield continues to be entitled to reasonable, necessary, and related medical treatment under the initial Compensation Order.

5. Smoky Mountain Home Health & Hospice shall pay the $150.00 filing fee to the Clerk of the Court of Workers' Compensation Claims within five business days. Smoky Mountain shall complete and file an SD2 documenting the conclusion of this case within ten days of the date this order becomes final. Unless appealed, this order becomes final thirty days after the date of issuance.

**ENTERED June 30, 2023.**

_Lisa A. Lowe_
**JUDGE LISA A. LOWE**
**Court of Workers' Compensation Claims**

---

[3] Smoky Mountain filed a Motion for Summary Judgment, but the Court held it in abeyance. Since the Court determined that Ms. Satterfield is not eligible for permanent total disability benefits, this issue need not be decided.

## APPENDIX

Exhibits:

1. Deposition Transcript of Dr. William Kennedy
2. Deposition Transcript of Dr. Paul Brady
3. Deposition Transcript of Dr. Harold Moses
4. Vocational Report of Michael Galloway
5. Vocational Report of Michelle McBroom Weiss
6. Medical Records with Table of Contents
   a. Vanderbilt MS Center
   b. Family Care Specialists
   c. AFC Urgent Care
   d. C-30A Final Medical Report of Dr. Paul Brady
   e. Knoxville Heart Group
   f. UT Medical Center
   g. Vanderbilt Neurology
   h. Tennessee Orthopaedic Clinic
   i. Vanderbilt University Medical Center
   j. Fort Sanders Regional Medical Center

Marked for Identification Purposes Only:

7. Application for CareBridge Health Position

Technical record:

1. Petition for Benefit Determination, November 8, 2019
2. Dispute Resolution Statement
3. Petition for Benefit Determination, November 17, 2020
4. Dispute Certification Notice, December 14, 2020
5. Compensation Order
6. Petition for Benefit Determination, October 7, 2022
7. Dispute Certification Notice, December 7, 2022
8. Hearing Request
9. Scheduling Order
10. Employer's Motion for Summary Judgment
11. Employer's Statement of Undisputed Facts
12. Notice of Filing of Michael Galloway's Rule 72 Declaration
13. Employee's Response to Employer's Motion for Summary Judgment
14. Employee's Statement of Material Facts
15. Employee's Response to Employer's Statement of Undisputed Facts
16. Order Holding Summary Judgment Motion in Abeyance

17. Employee's Additional Issues
18. Employer's Additional Issues
19. Dispute Certification Notice, May 10, 2023
20. Notice of Filing Transcript of William Kennedy, MD's Second Deposition
21. Notice of Filing Transcript of Paul Brady, MD's Deposition
22. Employee's Pre-Compensation Hearing Statement, Witness and Exhibit List
23. Employer's Witness and Exhibit List
24. Employer's Trial Brief

## CERTIFICATE OF SERVICE

I certify that a copy of the Order was sent as indicated on June 30, 2023.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| Timothy Roberto Employee's Attorney | | X | troberto@brownandroberto.com |
| Tiffany B. Sherrill, Employer's Attorney | | X | tbsherrill@mijs.com |

*Penny Shrum*
_____
**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**



<u>Compensation Order Right to Appeal</u>:

       If you disagree with this Compensation Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1.  Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the Compensation Order was filed.  When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3.  You are responsible for ensuring a complete record is presented on appeal.  The Court Clerk will prepare the technical record and exhibits for submission to the Appeals Board, and you will receive notice once it has been submitted. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  A licensed court reporter must prepare a transcript, and you must file it with the Court Clerk *within fifteen calendar days* of filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of filing the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the testimony presented at the hearing.  The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board.  If the Appeals Board must review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.  You have *fifteen calendar days* after the date of that notice to file a brief to the Appeals Board.  *See the Rules governing the Workers' Compensation Appeals Board on  the Bureau's website*

**If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.  Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on _____     ☐ Other Order filed on _____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s) (Requesting Party):** _____  ☐ Employer ☐ Employee

Address: _____  Phone: _____

Email: _____

Attorney's Name: _____  BPR#: _____

Attorney's Email: _____  Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s) (Opposing Party):** _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 ____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone      $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing       $ _____ per month

Gas              $ _____ per month    Child Care     $ _____ per month

Transportation   $ _____ per month    Child Support  $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile             $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                  $ _____        (FMV) _____

Other                  $ _____        Describe: _____

11. My debts are:

Amount Owed                          To Whom

_____          _____

_____          _____

_____          _____

_____          _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____