IN THE SUPREME COURT OF TENNESSEE
SPECIAL WORKERS' COMPENSATION APPEALS PANEL
AT JACKSON
Assigned on Briefs August 19, 2024

**MARK GRAY v. TYSON FOODS, INC.**

FILED

JAN 2 3 2025

Clerk of the Appellate Courts
Rec'd By a.h.d.

Appeal from the Workers' Compensation Appeals Board
Court of Workers' Compensation Claims
No. 2021-07-0545   Amber E. Luttrell, Judge

_____

No. W2024-00447-SC-R3-WC – Mailed October 10, 2024

_____

Mark Gray ("Employee") reported injuries after falling from a ladder while working for Tyson Foods, Inc. ("Employer"). The claim was accepted as compensable, and the parties entered into a settlement agreement providing permanent partial disability benefits. After the initial compensation period ended, Employee filed a petition for increased benefits. Following a hearing, the Court of Workers' Compensation Claims ("trial court") denied the request for increased benefits. The Workers' Compensation Appeals Board ("Appeals Board") affirmed. Employee has appealed, and the appeal has been referred to the Special Workers' Compensation Appeals Panel pursuant to Tennessee Supreme Court Rule 51. We affirm the judgment of the Appeals Board and adopt its opinion as set forth in the attached Appendix.

**Tenn. Code Ann. § 50-6-217(a)(2)(B) Appeal as of Right;
Decision of the Workers' Compensation Appeals Board Affirmed**

VANESSA A. JACKSON, SR. J., delivered the opinion of the court, in which JEFFREY S. BIVINS, J., and W. MARK WARD, SR. J., joined.

Charles L. Holliday, Jackson, Tennessee, for the appellant, Mark Gray.

Jared S. Renfroe, Memphis, Tennessee, for the appellee, Tyson Foods, Inc.

# OPINION

Employee was injured on February 25, 2020, when he fell off a ladder at work. The parties entered into a settlement agreement in February 2022, agreeing to a permanent impairment rating of 11.5% to the body as a whole. This resulted in an agreed award of $34,819.99, which Employer paid as a lump sum to Employee. The initial compensation period ended on August 8, 2022.

On January 11, 2023, Employee filed a petition for benefit determination, seeking increased permanent partial disability benefits. After mediation was unsuccessful, a dispute certification notice was issued on February 9, 2023. The parties agreed that the dispute centered on whether Employee was entitled to increased benefits under Tenn. Code Ann. § 50-6-207(3)(B).

A compensation hearing was held on August 16, 2023. The trial court entered a compensation order on September 15, 2023, determining that Employee was not entitled to increased benefits because he was earning a greater wage at the time his initial compensation period ended than at the time of his injury. The trial court further found that, even if Employee had not been earning a greater wage, he would not have been entitled to increased benefits because he had been terminated for failure to comply with Employer's COVID-19 vaccination policy, which the trial court determined constituted misconduct.

Employee appealed, and the Appeals Board affirmed and certified the trial court's order as final. The Appeals Board agreed with the trial court that Employee was not entitled to increased benefits because he was earning a greater wage. As a result, the Appeals Board found it unnecessary to address whether Employee's failure to comply with Employer's vaccination policy constituted misconduct.

In this appeal, the only issue is whether the trial court erred in determining that Employee was not entitled to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B). Upon due consideration, we affirm the judgment of the Appeals Board and adopt its opinion as set forth in the attached Appendix. Costs of this appeal are taxed to Mark Gray, for which execution may issue if necessary.

VANESSA A. JACKSON, SENIOR JUDGE

2

APPENDIX

## (OPINION OF THE WORKERS' COMPENSATION APPEALS BOARD)

### Factual and Procedural Background

Mark Gray ("Employee") worked for Tyson Foods, Inc. ("Employer"), in maintenance. On February 25, 2020, Employee fell 10-12 feet from a ladder at work, resulting in pain in his right arm and shoulder, low back, hip, collarbone, and right leg. His claim was accepted as compensable, and medical benefits were paid. Employee returned to work for Employer following the injury but was subsequently terminated as of November 1, 2021, because he declined to take a COVID-19 vaccine as mandated by Employer.

On February 10, 2022, the trial court approved a proposed settlement of Employee's claim for an "original award" of permanent disability benefits as that term is defined in Tennessee Code Annotated section 50-6-207(3)(A). After leaving his job with Employer, Employee began working as an independent contractor. At the time his initial compensation period ended on August 8, 2022, Employee was working for two different companies, one of which paid him $20.00 per hour and the other of which paid him $25.00 per hour.[1] Thereafter, Employee filed a petition seeking increased benefits pursuant to Tennessee Code Annotated section 50-6-207(3)(B).

Employer denied the claim for increased benefits, asserting that Employee's refusal to receive a mandated COVID-19 vaccine constituted misconduct, which it argued disqualified Employee from receiving increased benefits pursuant to section 50-6-207(3)(D)(ii) or, in the alternative, that his decision not to receive the vaccine was the equivalent of a voluntary resignation under section 50-6-207(3)(D)(i). Employer also claimed that Employee had returned to work following his separation earning wages at a rate higher than his pre-injury rate, thereby disqualifying him from receiving increased benefits in accordance with Tennessee Code Annotated section 50-6-207(3)(B).

In preparing for a hearing on Employee's claim for increased benefits, the parties stipulated that Employee was claiming entitlement to additional permanent disability

---

[1] The parties stipulated that, at the time of the work injury, Employee was earning wages at a rate of $22.22 per hour. Employee also acknowledged that, after his work as an independent contractor ended, he became an employee of another company earning wages at a rate equal or higher than the rate he was earning at the time of his injury.

3

benefits pursuant to section 207(3)(B) only. They further stipulated that, as of the date Employee's initial compensation period ended, he was working as an independent contractor as noted above.

Following the hearing, the trial court issued an order denying Employee's claim for increased benefits. The court determined that, based on our opinion in *Marshall v. Mueller Co.*, No. 2015-01-0147, 2016 TN Wrk. Comp. App. Bd. LEXIS 74 (Tenn. Workers' Comp. App. Bd. July 11, 2016), the term "wages" as used in section 207(3)(B) refers to the hourly rate at which a worker is compensated if the worker is compensated on an hourly basis. The trial court then stated, "[t]he plain language of the clause does not require [Employee] to return to work as a W2 employee." Thus, because Employee had returned to work and was earning wages for one company at an hourly rate higher than his pre-injury rate, he was disqualified from seeking increased benefits under subsection 207(3)(B). The court further determined that Employee's decision not to take a company-mandated COVID-19 vaccine constituted "misconduct connected with the employee's employment," which also disqualified him from receiving increased benefits pursuant to section 207(3)(D)(ii). Employee has appealed.

## Standard of Review

The standard we apply in reviewing the trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2023). However, the interpretation and application of statutes and regulations are questions of law that are reviewed de novo with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2023).

## Analysis

As an initial matter, we note that Employer cites Tennessee Code Annotated section 50-6-217(a)(3) (2016) (repealed 2017) in its brief, which authorized us to reverse or modify a trial court's decision if the rights of a party were prejudiced because the findings of the trial judge were "not supported by evidence that is both substantial and material in light of the entire record." However, as we have observed on numerous occasions, this code section was repealed effective May 9, 2017. Consequently, the standard we apply in reviewing the

trial court's decision presumes that the trial judge's factual findings are correct unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-239(c)(7).

Employee has raised five issues on appeal, which we have restated as follows: (1) whether the trial court erred in considering Employee's rate of pay as of the date his original compensation period ended as opposed to comparing his gross wages for the pay period during which his original compensation period ended to his gross wages in the pay period during which the work accident occurred; (2) whether a worker who earns income as an independent contractor as of the date the original compensation period ended has "returned to work" within the meaning of Tennessee Code Annotated section 50-6-207(3)(B); (3) whether the income earned by someone who returned to work as an independent contractor can be fairly compared to the worker's pre-injury wages; (4) whether we misinterpreted the law in *Marshall v. Mueller Company*; and (5) whether the trial court erred in determining Employee's separation from Employer was due to "misconduct."

The first four issues raised by Employee as noted above relate to an injured worker's right to seek "increased benefits" as that term is used in Tennessee Code Annotated section 50-6-207(3)(b). Following the effective date of the 2013 Workers' Compensation Reform Act, the manner in which an injured worker receives benefits to compensate him or her for permanent partial disability changed significantly. The new system for paying permanent partial disability benefits was discussed extensively in *Batey v. Deliver This, Inc.*, 568 S.W.3d 91 (Tenn. 2019):

> The manner in which a trial court determines an injured worker's eligibility for permanent disability benefits is governed primarily by two statutes: Tennessee Code Annotated sections 50-6-207 and 50-6-242. When a worker suffers a compensable work injury, reaches maximum medical improvement, and is assigned a permanent medical impairment rating, he or she is entitled to receive permanent disability benefits. *See* Tenn. Code Ann. § 50-6-207(3)(A). The amount of such benefits is calculated by multiplying the employee's medical impairment rating by 450, then multiplying the result by the employee's weekly compensation rate. This amount is designated the "original award." An injured worker is entitled to the "original award" regardless of his or her employment status as of the date of maximum medical improvement. *Id.*

> If, at the end of the initial period of compensation (the number of weeks represented by the original award), the employee *has not returned to*

*work for any employer at an equal or greater rate of pay as before the injury*, then the employee qualifies for an increased benefit equal to 1.35 times the original award (minus a credit for payment of the original award). A trial court can further increase this award if: (1) the employee lacks a high school diploma or general equivalency diploma; (2) the employee is over the age of 40 at the time the initial period of compensation ends; or (3) the unemployment rate in the employee's Tennessee county of employment was at least two percentage points higher than the state's unemployment rate at the time the initial period of compensation ends. *Id.* These additional benefits are generally called an "increased award" or "increased benefits."

*Id.* at 96 (emphasis added).[2] Notably, the Supreme Court approved and adopted the language from our earlier analysis in *Batey* explaining that the relevant comparison when considering a claim for increased benefits is the "rate of pay" of the injured worker as of the date of the injury and as of the date the original compensation period ended. Thus, we conclude Employee's argument that a court should compare the gross wages of the employee during the week or pay period during which the initial compensation period ended to his or her gross wages as of the week or pay period of the accident is without merit. We further conclude that Employee's contention that we erred in analyzing the phrase "wages or salary" as discussed in *Marshall v. Mueller Company* is also without merit. The Supreme Court has expressly approved and adopted our analysis stating that the word "wages" as used in Tennessee Code Annotated section 50-6-207(3)(B) refers to the "rate of pay" of the injured worker when that worker is compensated on an hourly basis. Consequently, in the present case, we conclude the trial court did not err in finding that it must consider whether the employee had returned to work at an hourly rate equal to or greater than his hourly rate as of the date of his work accident.

Next, Employee argues that working as an independent contractor does not satisfy the criteria of section 207(3) because, under such circumstances, the injured worker is not an "employee" working for an "employer" as those terms are defined in the Workers' Compensation Law. We conclude this argument misconstrues the plain language of the statute. The relevant sentence of section 207(3) describes two circumstances where an employee may seek increased benefits: (1) if "the employee has not returned to work for any employer;" *or* (2) if the employee has "returned to work . . . receiving wages or a salary that is less than one hundred percent (100%) or the wages or salary the employee received

---

[2]In *Batey v. Deliver This, Inc.*, 568 S.W.3d 91, 93 (Tenn. 2019), the Tennessee Supreme Court affirmed and adopted "in its entirety" our opinion in *Batey v. Deliver This, Inc.*, No. 2016-05-0666, 2018 TN Wrk. Comp. App. Bd. LEXIS 2 (Tenn. Workers' Comp. App. Bd. Feb. 6, 2018).

from the employee's pre-injury employer on the date of the injury." Tenn. Code Ann. § 50-6-207(3)(B). The second of those two scenarios does not indicate that the injured worker must return to work as a "W2 employee"; it merely requires that the injured worker "return to work" earning "wages or a salary." *Id.* Here, Employee stipulated that, as of the date his initial compensation period ended, he was working as an independent contractor for two different companies, each of which was compensating him on an hourly basis. Thus, we agree with the trial court that, in the circumstances of this case, Employee "returned to work" as of the date his initial compensation period ended and was "receiving wages."

The more difficult question concerns how a court is to compare the "wages" of a worker who has returned to work as an independent contractor to his or her pre-injury wages as a traditional "W2 employee." In *Corso v. Accident Fund Ins. Co.*, No. M2015-01859-SC-R3-WC, 2016 Tenn. LEXIS 630 (Tenn. Workers' Comp. Panel Sept. 2, 2016), the Supreme Court's Special Workers' Compensation Appeals Panel emphasized that the "correct[] 'apples to apples' comparison for purposes of determining whether [an employee] returned to work at a wage equal to or greater than the wage he was receiving prior to his injuries is between the 'base pay' of the two jobs." *Id.* at *21. We adopted that analysis in *Matthews v. Family Dollar Stores of Tenn., LLC*, No. 2021-06-1175, 2023 TN Wrk. Comp. App. Bd. LEXIS 42, at *26-27 (Tenn. Workers' Comp. App. Bd. Aug. 22, 2023).

It is well settled that an employee bears the burden of proving every essential element of his or her claim, including entitlement to permanent disability benefits. *See, e.g., Harris v. Vanderbilt Univ. Med. Ctr.*, No. 2021-05-1136, 2022 TN Wrk. Comp. App. Bd. LEXIS 34, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 9, 2022). Here, Employee admitted he had returned to work as of the date his initial compensation period ended and was working for two companies, one of which was paying him a higher hourly rate than his pre-injury rate. Employee offered no evidence of the number of hours he worked for each respective company in any given time period, and he did not assert or introduce evidence indicating that his combined hourly rate, when considering his wages from both companies, was less than his pre-injury rate. Moreover, he offered no evidence of the amount of any overhead expenses related to his contract work that he believed should be deducted from his pay before determining his effective hourly rate. Therefore, we conclude the trial court did not err in comparing Employee's pre- and post-injury wages based on the evidence presented at the hearing and in determining Employee did not qualify for increased benefits under subsection 207(3)(B).

Finally, given our conclusions regarding Employee's first four issues, it is

7

unnecessary for us to address Employee's final issue, which is whether his decision not to accept a company-mandated COVID-19 vaccine constituted "misconduct connected with the Employee's employment" or a "voluntary resignation" that disqualified him from seeking increased benefits.[3]

## Conclusion

For the foregoing reasons, we affirm the trial court's order and certify it as final. Costs on appeal are taxed to Employee.

---

[3]We note, as did the trial court, that Tennessee's General Assembly enacted a law, signed by the Governor with an effective date of November 12, 2021, that prohibited Tennessee employers from taking any adverse employment action based on an employee's refusal or failure to show proof of his or her COVID-19 vaccination status. However, that law went into effect after Employee's separation from Employer.

IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

**MARK GRAY v. TYSON FOODS, INC.**

**Appeal from the Workers' Compensation Appeals Board**
**Court of Workers' Compensation Claims**
**No. 2021-07-0545, Amber E. Luttrell, Judge**
_____

**No. W2024-00447-SC-WCM-WC**
_____

**JUDGMENT ORDER**

This case is before the Court upon the motion for review filed by Mark Gray pursuant to Tennessee Code Annotated section 50-6-225(a)(5)(A)(ii), the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Opinion setting forth its findings of fact and conclusions of law.

The motion for review is denied. The Panel's findings of fact and conclusions of law, which are incorporated by reference, are adopted and affirmed. The decision of the Panel is made the judgment of the Court.

Costs are assessed to Appellant, Mark Gray, for which execution may issue if necessary.

It is so ORDERED.

PER CURIAM

JEFFREY S. BIVINS, J., not participating