**FILED**
**Oct 11, 2023**
**02:04 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **ROBERT CAMPBELL,** | ) | **Docket No. 2022-06-0825** |
| **Employee,** | ) | |
| **v.** | ) | |
| **TARGET CORPORATION,** | ) | **State File No. 83229-2018** |
| **Employer,** | ) | |
| **And,** | ) | |
| **INDEMNITY INS. CO. OF NORTH** | ) | **Judge Joshua D. Baker** |
| **AMERICA,** | ) | |
| **Carrier.** | ) | |

---

### COMPENSATION ORDER

---

Mr. Campbell sought extraordinary relief after a settlement on his original award of permanent partial disability benefits. Target denied his entitlement to the requested relief, asserting Mr. Campbell returned to his pre-injury occupation. For the reasons below, Mr. Campbell is entitled to extraordinary relief.

### History of Claim

Mr. Campbell, who is sixty-three years old, started working at Target as a stocker when he was twenty-one years old. During his forty-two years there, much changed for him, including his promotion into executive leadership.

For roughly twenty years, Mr. Campbell worked as an executive team leader of logistics and general merchandise. He supervised a large team who unloaded trucks and replenished shelves, which was a physically demanding retail occupation with long hours.

As an executive leader, Mr. Campbell worked directly with those he supervised, doing all the same tasks they did, such as climbing while carrying merchandise, kneeling, squatting, and lifting items weighing up to forty pounds. Target's job description shows an executive leader of logistics and general merchandise must "continuously move" and

1

"handle all products sold by Target," including furniture, barbells, bikes, televisions, and heavy pallets of smaller items.

Mr. Campbell's efforts enabled him to receive handsome bonuses and widespread respect. Target transferred him between six locations to save stores that were flailing amid high-volume and a backlog of unloaded merchandise. Two former Target employees testified that Mr. Campbell was their "mentor." Dustin Ballard described him as "highly sought after" in logistics and general merchandise. He elaborated, "Anything Target, Robert could tell you." Maggie Loyd called him "one of the hardest working people" whom "everyone respected," and a "great leader."

However, Mr. Campbell's career in executive retail stalled after he injured his left-knee on August 2, 2018, when he slipped while moving a pallet stacked with twenty-four-pack cases of bottled water during unloading.

Mr. Campbell had multiple surgeries, and he returned to his executive position twice, once after an arthroscopic surgery and then again after a partial knee replacement. He also reached maximum recovery twice. Initially, Dr. Damon Petty released him after his partial knee replacement without any permanent restrictions in June 2020.

Before his June 2020 release, Mr. Campbell spoke with Target's human resource representative, Denise McKelvey, about returning to work. Ms. McKelvey told him he was no longer "up to Target's standards" as an executive leader over general merchandise. She presented him with only two options: "retire or take a Team Lead position."

When they spoke, Ms. McKelvey led Mr. Campbell to believe his executive position in the Brentwood store was filled. But Mr. Ballard, who at the time was the executive leader over Service and Engagement in Brentwood, testified he was only covering Mr. Campbell's executive position temporarily during that time, until Target could fill it.

Target posted an advertisement in July 2020, soliciting applications for Mr. Campbell's old position. Mr. Campbell confronted Ms. McKelvey about the ad but was told he must wait eighteen months before applying for executive leadership.

Mr. Campbell knew the team leader position meant a demotion providing only 55.36 percent of his pre-injury pay, yet he was too young to retire. So, he chose work, becoming a team leader in Food Services in June 2020 at the Spring Hill store, which was further from his home. Mr. Ballard, whom he had supervised and mentored, became his boss.

Meanwhile, because of continued problems with his left knee, Mr. Campbell needed additional surgery, so Dr. Stuart Smith performed a total knee replacement in late December 2020.

Mr. Campbell reached his final maximum recovery on August 3, 2021, with a ten-percent impairment and permanent restrictions that precluded retail work. He cannot lift over twenty-five pounds from floor to waist; thirty-five pounds from waist to shoulder; twenty-five pounds from floor to waist; can squat and climb only occasionally; and cannot kneel on his left knee. As a result, Mr. Campbell cannot fully perform the physical demands of either his old executive position or his new team leader position. He testified he could not be a team leader now without Target's continued accommodation of his permanent restrictions.

Mr. Campbell explained important differences between the physical requirements of the executive and team-leader positions. An executive leader supervises more people, including team leaders. Generally, an executive leader has more experience in retail, more responsibility, and earns considerably more pay.

In testimony, Mr. Campbell movingly exhibited the emotional—and not just economic—impact of his loss. Essentially, he compared himself to a discarded workhorse, milked of his best years and then fenced in by the very thing he had worked so hard for: his employer.

For medical proof, Dr. Smith acknowledged his signature on the physician certification form and reiterated that Mr. Campbell cannot return to his pre-injury occupation without accommodation. He responded clearly on cross-examination that Mr. Campbell can only move merchandise for a retailer who is willing to accommodate his permanent restrictions. No matter how the question was posed, Dr. Smith answered it the same way: Mr. Campbell can only do the type of work he did as an executive leader if his restrictions were accommodated.

Vocational expert Michael Galloway flatly rejected any theory that Mr. Campbell can work in executive retail management, and he explained why he cannot in simple terms. Mr. Campbell was a "working manager" with a "composite set of jobs." Put simply, he had to perform every task his workers performed.

In other words, retailers "all have the same general requirements of 50 pounds of exertion and lifting" and cannot accommodate permanent restrictions like Mr. Campbell's for one reason: executive leaders in retail cannot delegate from a desk. The stores who employ them cannot afford "wait[ing] for [employees] to get better and come back in; that merchandise has to be moved that day." He called it "the nature of retail: that's all expected when you're dealing with merchandise, moving from location to location in the store. All of those demands are consistent with the industry itself."

In his written report, Mr. Galloway estimated Mr. Campbell has "approximately 75% vocational disability as a direct consequence of the work injury with Target."

Before the hearing, the parties stipulated that Campbell is sixty-three years old and returned to work at 55.36% of his preinjury wages after recovering from his injury. He now earns 59.95% of his preinjury wages. Further, the parties stipulated that Mr. Campbell is entitled to the maximum weekly compensation rate of $929 and received $41,805 permanent partial disability payments with open future medical benefits for the ten-percent impairment from his work injury.

**Findings of Fact and Conclusions of Law**

Mr. Campbell must prove all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2023).

In "extraordinary cases," where the employee is eligible for increased permanent partial disability benefits under section 50-6-207(3)(B), the employee may receive additional benefits "not to exceed two hundred seventy-five (275) weeks inclusive of [his original award]." Tenn. Code Ann. 50-6-242(a)(2). This benefit is called "extraordinary relief."

Here, the parties agreed Mr. Campbell's original award was $41,805 and that he is entitled to increased benefits, making him eligible for extraordinary relief.

Extraordinary relief is appropriate "in lieu of" increased benefits if an injured worker proves by "clear and convincing evidence that limiting [his] recovery" only to increased benefits is "inequitable in light of the totality of the circumstances." Tenn. Code Ann. § 50-6-242(a)(2). A "clear and convincing" standard "eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992).

From Target's perspective, limiting Mr. Campbell to increased benefits is equitable because he is still employed in his pre-injury occupation. However, the "plain and ordinary meaning of the word 'occupation' includes more than a specific job, but describes the *type* of work one does as his or her 'usual or principal work.'" *Batey v. Deliver This, Inc.*, 568 S.W.3d 91, 99 (Tenn. 2019) (emphasis in original).

The *type* of work Mr. Campbell did for Target before his injury was executive-level leadership over the complicated logistics of moving general merchandise from a loaded truck onto store shelves for consumer purchase daily. While both positions are in the retail industry and involve supervising, they are not the same occupation.

4

Even more unsettling, the testimony from Mr. Campbell, Dr. Smith, and Mr. Galloway prove that Mr. Campbell is only capable of his current job because of his fortitude and Target's accommodation of his restrictions.

Mr. Campbell's case is extraordinary. He spent his life working not just in one field but mostly in one occupation and for one company, as an executive manager in logistics and general merchandise.

Mr. Campbell described in compelling detail how his work injury and permanent restrictions adversely affected him. Target benefitted from his decades-long commitment. That focused expertise made him valuable. However, when combined with his work injury's restrictions, it severely limited his employment options elsewhere, as evidenced by his seventy-five percent vocational disability. Not only is he precluded from working in his pre-injury job, but he also cannot work in his pre-injury occupation for another retailer.

Further, Mr. Campbell's income was nearly halved because of his work injury, while he was still several years away from his retirement. For those reasons, the Court finds by clear and convincing evidence that limiting Mr. Campbell's recovery is inequitable, entitling him to extraordinary relief.

To award him relief, the Court must also make "specific, documented findings" concerning three facts by a preponderance of the evidence. Tenn. Code Ann. § 50-6-242(a)(2)(A)-(C); *Batey,* at 98. Two of those facts are stipulated: Mr. Campbell has a ten-percent whole-body impairment and is not earning "greater than or equal to 70 percent" of his pre-injury salary. *Id.* at -242(a)(1)(A), (C). The remaining fact is:

> The authorized treating physician has certified on a form provided by the bureau that *due to the permanent restrictions* on activity the employee has suffered as a result of the injury *the employee no longer has the ability to perform the employee's pre-injury occupation.* The authorized treating physician's certification pursuant to this subdivision (a)(2)(B) shall have a presumption of correctness that may be overcome by the presentation of contrary clear and convincing evidence.

*Id.* at -242(a)(1)(B) (emphasis added).

Here, Dr. Smith testified he signed the relevant form to certify that Mr. Campbell cannot return to his pre-injury occupation because of his permanent restrictions. Thus, the Court finds Mr. Campbell proved this fact by a preponderance of the evidence.

Therefore, Target must prove by "contrary clear and convincing evidence" that Mr. Campbell is "capable of performing his pre-injury occupation." *Batey,* at 98.

Target offered Mr. Campbell's testimony that he is currently working at Target in a more minor, supervisory role in Food Services with accommodation of his restrictions. The Court previously found that this is not Mr. Campbell's pre-injury occupation. The experts' testimony showed that Mr. Campbell cannot perform his present work or his pre-injury work without accommodation. Therefore, the Court finds Target has failed to meet its burden in rebutting the presumption of correctness afforded to Dr. Smith.

Mr. Campbell received payment for forty-five weeks of benefits under his earlier settlement. The Court finds that he should be awarded the maximum amount allowed under section 50-6-242, or 230 weeks of benefits. The Court bases this finding on Mr. Campbell's extensive experience, knowledge, and skill in working for only one company, Target. His forty-two-year work history, coupled with his lack of experience elsewhere, created substantial goodwill for Target. However, it created a gulf in opportunities outside the company for him to earn a similar salary, which he worked hard to achieve.

This gulf is evident from the lack of available opportunities to earn a similar income in other retail settings due to his workplace injury, which has, according to Mr. Galloway, excluded him from seventy-five percent of available job options in the area. As Mr. Galloway and Mr. Campbell correctly concluded, he simply could not find similar employment offering similar wages without accommodations that employers other than Target are unlikely to provide.

Target argued extensively that it should be commended for its decision to return Mr. Campbell to work and accommodate his restrictions. The Court agrees but finds Target relies too much on its benevolence while attempting to deny Mr. Campbell extraordinary relief. The Court cannot ignore that it only did so at a wage that was roughly forty-five percent less than his pre-injury wage, which he earned through four decades of hard work and loyalty to one company.

Further, Target admittedly had positions available that would have paid Mr. Campbell similar wages but declined to place him in those positions because he could not perform the jobs "up to Target's standards." Despite his extensive experience, he was forced to take a job not only with severely decreased pay but that also placed him in a position beneath those he had mentored over the years.

For all these reasons, the Court finds that limiting Mr. Campbell's recovery to increased benefits would be inequitable based on the totality of the circumstances and awards him extraordinary relief.

**IT IS, THEREFORE, ORDERED** as follows:

1.  Target shall pay Mr. Campbell extraordinary relief in the amount of $213,670, or 230 weeks of benefits at $929 per week, under Tennessee Code Annotated section 50-6-242(a)(2). His attorney is entitled to fees of twenty percent of this award or $42, 734.

2.  Target shall continue to pay reasonable and necessary future medical expenses as required by the settlement agreement under Tennessee Code Annotated section 50-6-204(a)(1)(A).

3.  Mr. Campbell may file a motion for discretionary costs incurred in prosecuting his claim.

4.  Target shall pay the $150.00 filing fee to the Clerk within five business days after this order becomes final under Tennessee Compilation Rules and Regulations 0800-02-21-.06.

5.  Unless appealed, this order shall become final in thirty days.

6.  Target shall file Form SD-2 with the Clerk within ten business days of this order becoming final.

**ENTERED October 11, 2023.**


_____
**Judge Joshua D. Baker**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:

1. Deposition of Dr. Smith, including exhibits 1,3,4 and 5
2. Vocational Evaluation by Mr. Galloway with curriculum vitae
3. Employer's Job Posting
4. Employer's Job Description of Executive Team Leader
5. Employee's Pay Information
6. First Report of Injury
7. Settlement Approval Documents filed May 5, 2022
8. Employer's Job Description of Food Service Team Leader
9. Employee's Payroll Information
10. Medical Records

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Scheduling Order
5. Employee's Motion to Compel
6. Employer's Response to Motion to Compel
7. Order Granting Motion to Compel
8. Notice of Filing of Deposition of Dr. Smith with Table of Contents
9. Joint Pre-hearing Statement

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as shown on October 11, 2023.

| Name | Cert. Mail | First Class Mail | Email | Service Sent To: |
|---|---|---|---|---|
| Jill Draughon, Mr. Campbell's attorney | | | X | jdraughon@hughesandcoleman.com sconner@hughesandcoleman.com |
| Tom Smith, Target's Attorney | | | X | tsmith@spicerfirm.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

**Parties**

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*