FILED
**Nov 06, 2023**
12:18 PM(CT)
TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Kimberly Satterfield | ) | Docket No. 2019-03-1440 |
| | ) | |
| v. | ) | State File No. 7635-2019 |
| | ) | |
| Smoky Mountain Home Health and | ) | |
| Hospice, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 5, 2023 |
| Compensation Claims | ) | at Knoxville |
| Lisa A. Lowe, Judge | ) | |

---

## Affirmed and Certified as Final

---

This is an appeal of the trial court's compensation order awarding extraordinary relief under Tennessee Code Annotated section 50-6-242. The employee was working as a home health nurse when she slipped on ice and injured her right shoulder, middle finger, hip, and knee. After an initial compensation hearing, the employee was awarded permanent partial disability benefits consistent with her impairment rating and future reasonable and necessary medical benefits. At the end of her initial benefit period, she filed a new petition for benefits seeking permanent total disability benefits or, in the alternative, extraordinary relief. After a hearing at which the employee and two vocational experts testified, the court awarded two hundred seventy-five weeks of permanent disability benefits pursuant to Tennessee Code Annotated section 50-6-242(a)(2). The employer has appealed. Upon careful consideration of the record and the arguments of counsel, we affirm the court's decision and certify it as final.

Judge Meredith B. Weaver delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Pele I. Godkin joined.

Tiffany B. Sherrill, Knoxville, Tennessee, for the employer-appellant, Smoky Mountain Home Health and Hospice, Inc.

Timothy A. Roberto, Knoxville, Tennessee, for the employee-appellee, Kimberly Satterfield

1

**Factual and Procedural Background**

Kimberly Satterfield ("Employee") is a registered nurse who slipped and fell on ice while working for Smoky Mountain Home Health and Hospice, Inc. ("Employer") on January 29, 2019. She landed on her right knee with her arm outstretched, resulting in injuries to her right shoulder, middle finger, hip, and knee. Employer accepted the claim as compensable and provided authorized treatment with Dr. Paul Brady for her shoulder, Dr. Conrad Ivie for her knee and hip, and Dr. Timothy Renfree for her middle finger. Dr. Brady treated her for a rotator cuff tear in the shoulder, which he stated was more than fifty percent caused by the work injury and resulted in an eleven percent impairment. Dr. Ivie determined Employee's knee and hip injuries, which included a meniscal tear in the knee, were more than fifty percent related to the work injury and assigned a three percent impairment. Dr. Renfree found Employee's middle finger injury was caused by the work fall and assessed a two percent impairment. Finally, Employee was evaluated by Dr. William Kennedy, who provided a combined impairment of twelve percent and opined that the impairment for all her injuries was primarily caused by the work accident.

At the initial compensation hearing in June 2022, Employer argued Employee's fall was idiopathic in nature and/or caused by her multiple sclerosis ("MS"). In support of its position, Employer presented records from prior physicians indicating Employee had suffered past falls and weakness on the right side due to her MS. In response, Employee asserted that most of the episodes as reflected in past medical records did not occur or were depicted incorrectly in the medical records. Following the compensation hearing, the trial court awarded permanent partial disability benefits equating to a 12% vocational disability and future reasonable and necessary medical benefits. The order contained language acknowledging that the initial benefit period had not expired pursuant to Tennessee Code Annotated section 50-6-207(3)(A), and thus, the court was unable to determine whether Employee was entitled to increased benefits or extraordinary relief at that time. That order was not appealed.

On October 7, 2022, Employee filed a new petition for benefit determination, stating that the initial benefit period had expired and that she was seeking "increased, additional, and permanent total disability [benefits]." A dispute certification notice ("DCN") was filed on December 7, 2022, identifying jurisdiction and compensability as the disputed issues. Following the entry of a scheduling order, Employer filed a motion for summary judgment, arguing Employee was precluded from being awarded permanent total disability benefits as her initial petition filed in November 2020 did not allege that she was permanently and totally disabled and she did not present proof at the June 2022 compensation hearing that she was permanently and totally disabled. Therefore, Employer argued, Employee had waived any claim to permanent total disability benefits. It further argued that the specific language of Tennessee Code Annotated section 50-6-207(4)(B) prohibits an award of permanent total disability when an employee files for increased benefits after an award of permanent partial disability. In support of this position, Employer pointed to the language

2

stating that permanent total disability benefits can only be sought "[w]hen an injury *not otherwise specifically provided for in this chapter* totally incapacitates the employee from working at an occupation that brings the employee an income." Tenn. Code Ann. § 50-6-207(4)(B) (emphasis added). Hence, Employer argues that because Employee received permanent partial disability benefits at a compensation hearing, her injury did not qualify as one "not otherwise specifically provided for in this chapter," and she could not qualify for an award of permanent total disability benefits.

In response to the dispositive motion, Employee submitted an affidavit from vocational expert Michael Galloway asserting Employee was, in his opinion, one hundred percent vocationally disabled as evidence that she had sufficient proof to establish she was permanently and totally disabled. Furthermore, Employee argued she could not have known she was permanently and totally disabled at the time she filed her initial petition for benefits because she had not yet reached maximum medical improvement. Finally, Employee argued the language upon which Employer relied from section 50-6-207(4) was a "relic" from the pre-reform law and was intended only to refer to scheduled member injuries, which are no longer included in the Workers' Compensation Law.

The court heard the motion for summary judgment in April 2023. However, because the DCN only certified jurisdiction and compensability as disputed issues, the court issued an order holding the motion in abeyance, noting it could only adjudicate matters certified as disputed issues by the mediator on a DCN pursuant to Tennessee Code Annotated section 50-6-239(b)(1). The court referred the case back to mediation and requested the mediator to certify permanent disability benefits as a disputed issue if the matter did not resolve at post-discovery mediation, which had previously been set by the court in the scheduling order. Employer did not appeal the trial court's order holding the motion for summary judgment in abeyance and ordering the mediator to identify permanent disability benefits as a disputed issue in the event the case was not settled.

The claim did not settle at mediation, and the mediator issued a DCN identifying permanent disability benefits as a disputed issue, to which Employer objected. A compensation hearing was held on June 27, 2023. Employee, Mr. Galloway, and Michelle McBroom Weiss, the vocational expert retained by Employer, all testified live, and Drs. Brady and Kennedy testified by deposition. The parties agreed Employee had not returned to work, but nearly all remaining issues were contested. As a threshold issue, Employer argued Employee could not receive any further disability benefits as permanent disability was not listed as a disputed issue on the December 7, 2022 DCN. Employee argued that the petition for benefit determination itself clearly indicated additional permanent disability benefits were being sought, and the petition was attached to the DCN. When those documents were considered as a whole, in Employee's view, the issue was not waived. Employer also reiterated its argument from the summary judgment hearing that Employee could not seek permanent *total* disability, as she had previously been adjudicated as permanently *partially* disabled.

3

Finally, Employer further disputed that Employee was unable to return to her pre-injury occupation as certified by Dr. Brady pursuant to Tennessee Code Annotated section 50-6-242(a)(2)(B) or, if she indeed was unable to return to that occupation, that it was due to Employee's pre-existing MS rather than her work injuries. Employer argued that Employee could return to her pre-injury occupation due to her extensive education, which included a Bachelor of Nursing, a Master of Science of Nursing with a concentration in women's health, and a Doctorate of Nursing Practice, as well as her extensive work history as a nurse practitioner, home health nurse, and nurse education instructor.

In response, Employee presented permanent work restrictions from both Dr. Brady and Dr. Kennedy placing her in the "sedentary" category of work. Mr. Galloway reiterated his opinion that Employee was one hundred percent vocationally disabled despite her extensive education. Although Ms. Weiss had not been asked by Employer to provide a percentage of vocational disability, she did testify that the *Dictionary of Occupational Titles* used by Mr. Galloway was not appropriate in this case because it was outdated and written before telehealth was utilized in the nursing profession. As such, she testified she had found ten nursing jobs in Employee's labor market that she could perform based on her education, work experience, and restrictions. Employee disputed that she could perform any of the positions listed by Ms. Weiss for a variety of reasons, including difficulty keyboarding because of her finger fracture, pain in her right arm, and a lack of certifications required for certain positions. Ms. Weiss testified she had performed a labor market study, contacting various employers seeking nursing professionals, and that those businesses had confirmed Employee would be a candidate based on her education and experience. Employee further testified her MS did not contribute to her inability to work, stating she had always been able to perform her job duties prior to the work injury without any accommodations due to her MS.

Following the hearing, the court awarded 275 weeks of permanent disability benefits as extraordinary relief in accordance with Tennessee Code Annotated section 50-6-242. The trial court determined "while [Employee] is not permanently and totally disabled, she established by clear and convincing evidence it would be inequitable to limit her to increased benefits alone, since she has no real job possibilities." In response to Employee's claim for permanent total disability, the court stated that, although Employee's employment opportunities were "significantly limited," they were not "non-existent." The court agreed with Ms. Weiss that some jobs existed that Employee could perform, which precluded an award of permanent total disability.[1] The court did not address Employer's argument that the issue of permanent disability benefits was waived in the December 2022 dispute certification notice. Employer has appealed.

---

[1] The court later amended its order to account for a credit of fifty-four weeks, the original award, against the two hundred seventy-five-week award.

4

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

**Analysis**

On appeal, Employer raises two issues, which we restate as: (1) whether Employee waived any claim for any additional permanent disability benefits based on the December 2022 DCN; and (2) whether Employee is entitled to extraordinary relief as awarded by the trial court. In her responsive brief, Employee raises two additional issues: (1) whether the testimony of Employer's vocational expert should have been excluded due to her reliance on hearsay in forming her opinions; and (2) whether Employee should have been awarded permanent total disability benefits. For its part, Employer counters that Employee cannot raise any issues of her own as she did not file a notice of appeal.

*Waiver of Claim for Permanent Disability*

Employer notes that the initial DCN completed after Employee filed her petition for increased benefits, dated December 7, 2022, lists only two disputed issues: "Jurisdiction" and "Compensability." The category of "Permanent Disability Benefits" is not marked as a "Disputed Issue" on the DCN, and although both parties were given time to respond to the DCN before it was certified and submitted to the trial court, neither party requested any edits or submitted any further issues. As such, Employer argues that Employee waived any claim for additional permanent disability benefits by failing to include those benefits as an issue on the DCN. We are unpersuaded.

5

Tennessee Code Annotated 50-6-239(b)(1) states, in part:

> Unless permission has been granted by the assigned workers' compensation judge, only issues that have been certified by *a* workers' compensation mediator within *a* dispute certification notice may be presented to the workers' compensation judge for adjudication.

(Emphasis added.)  The language of this portion of the statute requires that an issue be certified by a mediator on *a* DCN, not necessarily *the initial* DCN that is filed at the outset of the claim.[2]  The trial court noted at the time of the summary judgment hearing that "Permanent Disability Benefits" was not marked as an issue on page one of the DCN under "Disputed Issues" and ordered the mediator to include permanent disability benefits as an issue following the post-discovery mediation if the parties were unable to resolve the case at that time.  The mediator did so in the May 10, 2023 DCN, and, as such, the issue of increased permanent disability was properly before the court at the compensation hearing.  Furthermore, Employer's argument would require the court to look at only one portion of a DCN in a vacuum, which we have previously stated is not the proper course of action.  In *Marzette v. Pat Salmon and Sons, Inc.*, No. 2014-08-0058, 2015 TN Wrk. Comp. App. Bd. LEXIS 29, at *11 (Tenn. Workers' Comp. App. Bd. Sept. 18, 2015), we explained, "it is necessary to consider the document as a whole" and in the context of the entire record to determine what issues were certified by the mediator.  *Id.*  In the case at hand, the mediator noted on the December 2022 DCN that mediation had occurred regarding permanent disability benefits and included the petition for benefit determination seeking increased permanent disability benefits at the time of the certification to the court.  As such, even without the court's instruction to include permanent disability benefits in the DCN following the post discovery mediation, when viewing the December 2022 DCN as a whole, and considering it in the context of the entire record as contemplated in *Marzette*, we find that Employee did not waive the issue of additional permanent disability benefits and that the trial court properly considered the issue.[3]

### *Extraordinary Relief*

Employer next argues that the trial court erred in awarding extraordinary relief in this case.  Tennessee Code Annotated section 50-6-207(3)(B) provides that "[i]f at the time the period of compensation . . . ends, . . . the employee has not returned to work with any employer . . . the injured employee may file a claim for increased benefits."  However, if the "presiding workers' compensation judge first determines based on clear and convincing

---

[2] The initial DCN relative to Employee's initial claim for benefits, which was filed on December 14, 2020, did identify "Permanent Disability Benefits" as a disputed issue.

[3] Employee argued that this defense from Employer was waived and not raised at the trial level.  However, Employer objected to the May 2023 DCN, and the argument is referenced in the Employer's trial brief and in the transcript of the proceedings.  Thus, we find this assertion to be without merit.

evidence that limiting the employee's recovery to the benefits provided [by that section] would be inequitable," that judge may award up to two hundred seventy-five weeks. Tenn. Code Ann. § 50-6-242(a)(2). To qualify for extraordinary relief, the employee must have an impairment rating of more than ten percent (10%) and cannot be earning an amount equal to or above seventy percent of his or her pre-injury wage at the time the compensation period ends. In addition, the employee's authorized treating physician must certify that the employee no longer has the ability to return to his or her pre-injury occupation, which refers to "the *type* of work one does as his or her 'usual or principal work.'" *Batey v. Deliver This, Inc.*, 568 S.W.3d 91, 99 (Tenn. 2019) (emphasis in original). Once the employee obtains the certification form signed by the treating physician, the burden shifts to the employer to provide clear and convincing evidence the employee could return to the pre-injury occupation. *Id*. at 98.

In this case, Employee has extensive education as a nurse, including masters and doctorate degrees. Employer presented proof regarding her work history as a professor in nurse training as evidence Employee could return to her pre-injury occupation. In his deposition, Dr. Brady acknowledged that although Employee would only occasionally be able to grip a laptop, she would not be restricted from a lecture-style teaching position with certain accommodations. He further testified that, in his opinion, Employee could not return to a position as a registered nurse but that he believed she could likely work at a computer.

Employer also presented proof from Ms. Weiss regarding potential employment within the field of registered nursing. Ms. Weiss performed a labor market survey and testified to ten possible positions in nursing that she believed, based on her experience, Employee would be qualified to perform within her given restrictions. Several of the positions were remote and involved telehealth. Employee testified she had no experience with that type of work and that she believed her difficulties with keyboarding would prevent her from doing that type of work.

While Employee had some experience as a professor, based on her testimony, the bulk of her work history was as a registered nurse treating patients. Her restrictions from the two testifying physicians placed her in a sedentary category, and the experts agreed she would not have been able to return to any of her prior nursing positions. Dr. Brady indicated that if she did return to teaching, accommodations would likely have to be made, and there was little evidence in the record regarding the physical requirements of her previous teaching position. The court found by clear and convincing evidence that it would be inequitable to limit Employee to increased benefits, which in this case would have allowed for increases based on her employment status and her age. Although Employer presented evidence of possible positions Employee could perform within her restrictions, we agree with the trial court that Employer did not meet its burden of proving by clear and convincing evidence that Employee could perform her pre-injury occupation. As such,

7

based on the totality of the circumstances, we conclude the preponderance of the evidence supports the court's award of extraordinary relief.

*Appellee's Right to Raise Issues on Appeal*

In her brief, Employee argues both that Employer's vocational expert's testimony should have been excluded and that the court erred by failing to award permanent total disability benefits. Employer responded, arguing Employee waived her right to appeal any issue by not filing a timely notice of appeal pursuant to Tennessee Code Annotated section 217(2)(B). Furthermore, it argued the timelines set forth in the applicable rules were not conducive to raising a new issue in a response brief. Although Employer raises a legitimate concern regarding the feasibility and timing of raising new issues in a response brief, we have previously addressed this issue. "Once an appeal is properly perfected, the statute does not restrict the Appeals Board to considering only issues identified by the appealing party in a notice of appeal but allows consideration of issues specified and argued by a party as long as the issue was properly presented and decided below." *Morgan v. Macy's*, No. 2016-08-0270, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *24 (Tenn. Workers' Comp. App. Bd. Aug. 31, 2016).

Employer notes that our opinion in *Morgan* was issued prior to amendments to the language in Tennessee Code Annotated section 50-6-217. Previously, the language of subsection 217(a)(1)(B) stated that "within thirty calendar days after issuance of a compensation order . . . either party may request an appeal. . . . Parties shall have fifteen calendar days after an appeal is filed to file briefs with the workers' compensation appeals board." Tenn. Code Ann. § 50-6-217(a)(1)(B) (2014). Currently, subsection 217(a)(2)(B) was amended to state, "[t]he appealing party has fifteen calendar days after the record is filed with the clerk of the workers' compensation appeals board to file a brief. A brief in response, if any, must be filed within 15 days of the filing of the appellant's brief." Tenn. Code Ann. § 50-6-217(a)(2)(B) (2022). We conclude this amendment did not address or limit a party's ability to raise issues in a response brief. Moreover, the regulations governing the appeals process contemplate that a reply brief may be filed within five business days if the response brief "raises an issue or issues on appeal not previously addressed in the appellant's brief." Tenn. Comp. R. & Regs. 0800-02-22-.06(3) (2020). As such, although the timeline is stringent, the rules clearly provide a mechanism for the appellee to raise additional issues in its response brief and for the appellant to reply to those issues.

Furthermore, although the Rules of Appellate Procedure are not binding on this Board, they are instructive. Under those rules, appellees may raise issues without filing a

separate notice of appeal once an appeal has been filed by another party. *See* Tenn. R. App. P. 3(h) and 13(a). In short, we find this issue to be without merit.[4]

## *Exclusion of Testimony*

Employee argues that the testimony of Employer's vocational expert should be excluded as unreliable because it was, at least in part, based on hearsay. *See* Tenn. R. Evid. 703. Specifically, Ms. Weiss testified that she or someone on her staff contacted various employers with open advertised positions she believed Employee may be qualified to perform. She (or her staff) discussed Employee's work history, education, and restrictions with the potential employer and, by so doing, created a list of potential employers within the nursing field. At trial, Employee's attorney objected to the testimony despite the fact that it was elicited by that same attorney. The court took the objection under advisement but also questioned Ms. Weiss, who confirmed "based on her experience and opinion as an expert, that [Employee] would qualify for at least one or more of these positions even if [she had not made] the phone calls." Ultimately, and as stated previously, the court considered Ms. Weiss's testimony and relied upon it in its determination that Employee's job opportunities were "not non-existent."

On appeal, Employee reiterates that she believes Ms. Weiss's testimony to be unreliable and based on hearsay, arguing that her conversations with the potential employers were possibly rooted in observation bias. We find this argument to be without merit and unconvincing. Ms. Weiss was not presenting these positions as actual jobs being offered to Employee but as potential opportunities for employment she believed Employee was qualified for and physically capable of performing. In addition, as noted above, the Rules of Evidence allow an expert to rely on evidence that would otherwise be inadmissible if it is of a "type reasonably relied on by experts in the particular field." Tenn. R. Evid. 703. In short, we conclude Employee's objection goes to the weight, not the admissibility, of this expert testimony.

## *Permanent Total Disability*

Finally, Employee argues that the court should have determined she is permanently and totally disabled based on the evidence presented at trial. For its part, Employer reiterates that Employee's previous award of permanent *partial* disability precludes the court from awarding her permanent total disability. An award of permanent total disability is appropriate only if a work-related injury "totally incapacitates the employee from working at an occupation that brings the employee an income." Tenn. Code Ann. § 50-6-207(4)(B). In analyzing an award of permanent total disability, "[t]he statute contemplates

---

[4] We also note that, although the Rules of Appellate Procedure do not apply at this stage of the case, if our opinion were appealed to the Tennessee Supreme Court, those rules would apply. Thus, the appellee would be allowed to raise any issues in a response brief as allowed by the rules noted above. Prohibiting the presentation of such issues at the current stage would violate precepts of judicial economy.

employment in the open labor market and not a return to the employee's previous position." *Prost v. City of Clarksville, Police Dep't.*, 688 S.W.2d 425, 427 (Tenn. 1985).

Employee's vocational expert, Michael Galloway, testified he believed Employee to be "one hundred percent vocationally disabled." However, he admitted he at least partially based that opinion on the *Dictionary of Occupational Titles*, which he acknowledged was outdated with regard to employment opportunities in the subspecialty of telehealth. He further admitted there were options for Employee using a dictation device and/or working as a lecturer in the field of nursing, albeit with certain accommodations. Ms. Weiss, as stated earlier, believed there were at least ten open positions that Employee could perform, although she did not offer an opinion as to a percentage of vocational disability in her report. As noted by the trial court, Employee's physical restrictions are substantial; however, an award of permanent total disability must be based on a finding that the employee cannot return to any position that would earn him or her an income, not just a prior position. Given her education and work experience, as well as the testimony of Ms. Weiss and the admissions of Mr. Galloway, we find no error in the court's determination that Employee is not permanently totally disabled. In short, the preponderance of the evidence supports the court's determinations. As such, because the trial court did not find that Employee is permanently and totally disabled, we need not address whether an employee can receive a permanent total disability award after previously being adjudicated as permanently partially disabled.

## Conclusion

For the foregoing reasons, we affirm the order of the trial court and certify it as final. Costs on appeal are taxed to Employer.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Kimberly Satterfield | ) | Docket No. 2019-03-1440 |
| | ) | |
| v. | ) | State File No. 7635-2019 |
| | ) | |
| Smoky Mountain Home Health and | ) | |
| Hospice, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard October 5, 2023 |
| Compensation Claims | ) | at Knoxville |
| Lisa A. Lowe, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 6th day of November, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Tiffany B. Sherrill<br>Gregory H. Fuller | | | | X | tbsherrill@mijs.com<br>ghfuller@mijs.com |
| Timothy A. Roberto | | | | X | troberto@brownandroberto.com<br>cmagnusson@brownandroberto.com |
| Lisa A. Lowe, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

*O. Yearwood*

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov